**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Levarn WARREN, Jr., Defendant–
Appellant.**

No. 00–5134.

United States Court of Appeals,
Sixth Circuit.

Oct. 16, 2001.

Before KEITH, SILER, and CLAY, Circuit Judges.

SILER, Circuit Judge.

Defendant Levarn Warren, Jr. was convicted on two counts of attempting and conspiracy to possess with the intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 846. He appeals his conviction on the sufficiency of the evidence and several evidentiary issues. We affirm.

## BACKGROUND

On March 2, 1999, officers with a Drug Enforcement Administration Task Force ("DEA") in Chattanooga were checking packages coming into the local Federal Express office. A drug dog alerted on a package from California containing cocaine and addressed to Mike Long at 110–C O'Neal Street, Warren's home address. After acquiring an anticipatory search warrant, Officer Janice Johnson posed as a Federal Express delivery person and delivered the package to Warren who signed the name Mike Long on the acceptance form. A few minutes later, the officers executed the search warrant. In addition to the opened package, the officers found small envelopes often used to package marijuana and crack cocaine. The telephone's caller ID revealed two entries that morning, one from a payphone in Compton, California, and one local call from Rodney Anderson. No weapons, scales, or drug paraphernalia were found in the apartment.

Swakishia Smith Geter, Warren's girlfriend who also lived in the apartment, contacted the DEA soon after Warren's arrest to inform them that someone named "Rob," whom she did not know, had called twice from California on March 3, 1999. Rob had asked where "Pedee" was, referring to Warren by his nickname. After Geter informed Rob that Warren had been arrested after a package was delivered to their home, Rob asked about the welfare of Geter's son. This concerned her be-

cause she did not know him, yet he knew she had a young son.

The evidence presented against Warren at trial included, but was not limited to, testimony from Officer Johnson, Geter, and Jerome Ware, a jailhouse informant who stated that Warren told him that Rodney Anderson had someone deliver drugs or "dope" to his house. The two calls logged on the telephone caller ID from "Rob" were also admitted as admissions by a co-conspirator.

## DISCUSSION

### A. Sufficiency of the evidence

When a defendant challenges the sufficiency of the evidence supporting a conviction, this court reviews *de novo* the evidence in "the light most favorable to the prosecution" in order to determine if "*any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)(emphasis in original).

Count One (attempt) required proof that Warren intended to distribute the cocaine in the Federal Express package, and that he participated in some overt act that was a substantial step toward committing this crime. Warren admits that proof was established that he possessed the cocaine, but argues that merely possessing the cocaine is not enough to support his conviction for attempt.

Count Two (conspiracy) required proof that (1) there was an "agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Welch,* 97 F.3d 142, 148 (6th Cir.1996). The government must show that defendant "agreed to participate in what he knew to be a joint venture to achieve a common goal." *United States v. Layne,* 192 F.3d 556, 567 (6th

Cir.1999)(internal citations and quotations omitted). This burden may be satisfied through circumstantial evidence. *See id.*

Evidence supporting the conviction under Count One includes Warren's knowledge of the false name to sign for the cocaine package, his residency in the apartment where the package was delivered, and his overt statements to a jailhouse informant that he "had dope delivered to his house." The small envelopes found in the apartment indicate his intent to distribute the cocaine shipped in the Federal Express package.

Further evidence supporting the conviction under Count Two includes Ware's testimony that Warren had the drugs delivered to his apartment, that the package was supposed to contain a kilogram of cocaine, that Warren's "brother" arranged the transaction and that Warren received a fee of $200. Therefore, sufficient evidence existed to convince a jury beyond a reasonable doubt that Warren was guilty under Counts One and Two.

### B. Jerome Ware's testimony

The following testimony was elicited by the government from Ware regarding his incarceration with Warren:

MR. LAYMON: Okay, During the course of your conversation or conversations with Mr. Warren...did he talk about other packages?

WARE: He said, yeah, when he stated -

At that point counsel for defendant objected on the grounds that testimony about other packages would be unfairly prejudicial under Fed.R.Evid. 403. The objection was overruled on the grounds that the evidence might be substantive evidence of the conspiracy or admissible under Fed. R Evid. 404(b), or in the alternative that the evidence did not violate Fed.R.Evid. 403. Defendant then waived the curative in-

struction and reserved the objection to the introduction of the evidence entirely. When the direct examination of Ware resumed, the government declined to pursue any further questions as to other packages.

Because the statement was incomplete and did not refer to any illegal acts, there was no error in the statement. However, assuming arguendo that it was erroneous to admit the statement, it was harmless, for the jury was not told of the contents of other packages.

### C. The co-conspirator statements

Warren argues that the trial court erred in permitting Geter to testify to statements made by "Rob." He claims that there is no independent corroborating evidence of his knowledge of and participation in a conspiracy. *United States v. Clark,* 18 F.3d 1337, 1341–42 (6th Cir.1994), holds that "absent *some* independent, corroborating evidence of defendant's knowledge and participation in the conspiracy, the out-of-court statements remain inadmissible." (Emphasis in original).

■ Rob's statements are admissible under Fed.R.Evid. 801(d)(2)(E) if the government shows by a preponderance of the evidence that: "(1) a conspiracy existed; (2)[ ] defendant was a member of the conspiracy; and (3)[ ] the co-conspirator's statements were made in furtherance of the conspiracy." *United States v. Mack,* 159 F.3d 208, 215 (6th Cir.1998)(internal quotations omitted). The court reviews these factual determinations under the clearly erroneous standard. *See id.*

The statements are linked to the conspiracy because Rob called Warren's home on the day after the cocaine was delivered. Rob's statements could be construed as threats against Geter not to reveal any information she may have as to the drug conspiracy. Nonetheless, any error made by the trial court in admitting this testimony is also harmless, for the caller made no reference to drugs.

### D. The cross-examination of Officer Janice Johnson

■ Warren argues that the trial court improperly prevented him from effectively cross-examining Officer Johnson by precluding her from refreshing her memory with telephone records reflecting incoming calls to Geter's home on March 2, 1999 and March 3, 1999. Because a trial judge is given "considerable discretion in controlling the mode and order of proof at trial," Warren's conviction shall not be reversed unless the rulings impact his substantial rights. *United States v. Vinson,* 606 F.2d 149, 152 (6th Cir.1979).

The claim of error involves the portion of Officer Johnson's cross-examination as to how she substantiated the allegations made by Geter concerning telephone calls Geter claimed came from California. After identifying that the two calls came from a payphone in Paramount, California and the home of Karen Newsome, also in Paramount, Newsome's phone records were subpoenaed to verify Geter's statements. Under Fed.R.Evid. 612, Warren argues that he had the right to use the telephone phone records to refresh Officer Johnson's memory during cross-examination because she could not recall all of the entries in the records to which she had testified. He states that his intent was to impeach her with the records, and that the records were available to him because she had referred to them herself. The trial court rejected Warren's argument on the basis that the phone records were not admissible as substantive evidence.

Warren was attempting to use the telephone records to impeach Geter, not Officer Johnson. Therefore, the records con-

stituted hearsay and were thus excludable as they were never authenticated by a custodian under Fed.R.Evid. 803(6). During direct examination, Officer Johnson never used the telephone records to refresh her memory. The "right...to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The trial court's ruling did not impact Warren's substantial rights and the records were properly excluded.

AFFIRMED.